**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAN DIEGO GAS & ELECTRIC COMPANY, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MITSUBISHI HEAVY INDUSTRIES, LTD, a Japanese corporation; MITSUBISHI NUCLEAR ENERGY SYSTEMS, INC., a Delaware corporation; MITSUBISHI HEAVY INDUSTRIES AMERICA, INC., a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 13-CV-1726-BEN (KSC)<br><br>**ORDER GRANTING MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**<br><br>[Docket No. 9] |

Before this Court is a Motion to Stay Proceedings Pending Arbitration brought by Defendants Mitsubishi Heavy Industries, Ltd. (MHI), Mitsubishi Nuclear Energy Systems, Inc. (MNES), and Mitsubishi Heavy Industries America, Inc. (MHIA). (Docket No. 9). For the reasons stated below, the Motion to Stay is **GRANTED**.

**I. Background**

The San Onofre Nuclear Generating Station ("SONGS") is located near San Clemente, California. The majority owner is Southern California Edison (Edison). The City of Riverside (Riverside) and Plaintiff San Diego Gas & Electric Company (SDG&E) are minority co-owners.

On or about September 28, 2004, MHIA and a subsidiary of Edison, Edison Material Supply LLC (EMS), entered into a Purchase Order whereby MHIA was to design, fabricate, and deliver four replacement steam generators (RSGs) for SONGS. MHIA allegedly assigned its contract rights to MNES in 2007, and MHI is alleged to have provided a parent guaranty. (Compl. ¶¶ 26, 31). SDG&E alleges EMS is a company created by Edison to engage in procurement of products "for the benefit of Edison and the Co-Owners of SONGS." (*Id.* ¶ 7). It alleges that the Second Amended San Onofre Operating Agreement states that Edison is the "Operating Agent" for the other owners of SONGS, and that Edison has responsibilities for operation and maintenance. (*Id.* ¶ 10). SDG&E states that it "is informed and believes . . . that EMS entered into the Purchase Order as the agent of Edison and the SONGS Co-Owners." (*Id.* ¶ 24). It further notes that the Purchase Order defines Edison as Southern California Edison Company, acting either for itself or as an operating agent for any co-owner participating in the project. (*Id.* ¶ 24). It states that there was no contract between SDG&E and EMS "except for EMS's duties as SDG&E's agent for the purpose of entering into the Purchase Order." (*Id.* ¶ 25). The Complaint repeatedly refers to promises and statements made "to EMS, as SDG&E's agent." (*E.g.*, *id.* ¶¶ 30, 31). SDG&E claims to have been a disclosed principal with direct rights against Defendants. (*E.g.*, *id.* ¶ 55). It also argues that, in the alternative, SDG&E was a third-party beneficiary of the Purchase Order, because SDG&E's agent, Edison was named as a third-party beneficiary. (*Id.* ¶ 63).

The Purchase Order incorporates by reference a set of General Terms and Conditions which includes a "Dispute Resolution" provision. "Dispute" is broadly defined to include "any dispute, controversy or claim between or among Supplier and EMS or Edison arising from or relating to the Purchase Order or the performance of the Work." (Croutch Decl., Ex. B § 1.22). The provision provides for an informal procedure for resolving disputes, and mandates binding arbitration if the parties cannot reach an informal resolution. (*Id.*) The informal procedure includes giving written

notice, providing a written response, and meeting to exchange information and attempt to resolve the dispute. (*Id.* § 1.22.1). The provision also states that:

> If the Dispute has not been resolved through negotiation within ninety (90) days after the date of the notice of Dispute received pursuant to Section 1.22.1, the Dispute shall be finally settled and resolved by arbitration in accordance with the ICC Rules, subject to such modifications of the ICC Rules as are set forth in this Section 1.22.2.

(*Id.* § 1.22.2.1). The Terms and Conditions state that: "The procedures specified in this Section 1.22 shall be the sole, exclusive procedures for the resolution of Disputes . . . ." (*Id.* § 1.22.5).

A disagreement has now arisen with regard to the RSGs which were provided pursuant to the Purchase Order. Edison and EMS initiated dispute resolution proceedings under the Purchase Order and the Terms and Conditions (collectively, "the Contract") by providing a written notice of dispute. The written notice specifically invoked the Contract and stated that notice was provided "individually and in its capacity as Operating Agent of [SONGS]" (Croutch Decl., Ex. C, at 1). Edison and EMS requested arbitration on October 16, 2013. (Notice of Filing of Request for Arbitration). SDG&E has not sent a written notice of dispute or demanded arbitration.

SDG&E filed suit in San Diego Superior Court on July 18, 2013, asserting ten causes of action related to the provision of RSGs under the Contract, including recission, breach of contract, three fraud claims, negligence, negligent interference with prospective economic advantage, express indemnity based on the Contract, equitable indemnity, and declaration relief for indemnity. (Compl.) Defendants removed the action on July 24, 2013. Defendants now ask this Court to stay proceedings pending arbitration pursuant to the Contract. This Court held a hearing on March 10, 2014.

**II. Legal Standard**

The parties agree that the contract at issue is subject to the Federal Arbitration Act (FAA). The FAA states that agreements to arbitrate are "valid, irrevocable and enforceable." 9 U.S.C. § 2. Section 3 provides that where an issue involved in a suit or proceeding is referable to arbitration under an agreement in writing, the district court

"shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3. The language is mandatory, and district courts are required to order arbitration on issues as to which an arbitration agreement has been signed. *Kilgore v. KeyBank*, *N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The role of the district court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). A court must therefore determine whether there is an agreement to arbitrate before ordering arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996). State law applies to determine which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Where a written arbitration provision is made enforceable against a third party under state contract law, the FAA's terms are fulfilled. *Id.* at 631.

As the claims for relief are state law claims, a federal court exercising diversity jurisdiction applies the law of the state in which it sits. *Dees v. Billy*, 357 Fed. App'x 813, 815 (9th Cir. 2009). In the absence of a controlling California Supreme Court decision, federal courts look to intermediate appellate court decisions. *Fourth Investment LP v. United States*, 720 F.3d 1058, 1069 (9th Cir. 2013).

California state law states that one must generally be a party to an agreement to be bound by it or invoke it. *DMS Servs., LLC v. Super. Ct.*, 205 Cal. App. 4th 1346, 1352 (2d. Dist. 2012). However, there are limited exceptions to the rule which allow nonsignatories to be compelled to arbitrate a dispute within the scope of the agreement,

including agency, estoppel, and third party beneficiary theories. *Id.* at 1353. These exceptions are generally based on the existence of a relationship between the nonsignatory and the signatory, such as principal and agent, where a "sufficient identity of interest exists between them." *Id.* (internal quotation omitted).

**III. Discussion**

SDG&E opposes Defendants' efforts to stay the case. It alleges that it is not a signatory to the agreement and raises concerns about the arbitration procedures.

A.  SDG&E is Bound to the Arbitration Clause by Equitable Estoppel

SDG&E contends that it should not be forced to arbitrate its dispute because it is not a signatory to the contract, and is not bound by the arbitration provision. It is undisputed that SDG&E did not sign the contract. However, Defendants assert that SDG&E is nonetheless bound by the arbitration provision. Defendants emphasize that Plaintiff's claims are based upon the contract, and argue that SDG&E is bound by the Terms and Conditions based on its own allegations. (Mot. at 4-5, 7).

California law recognizes that equitable estoppel can apply to permit a signatory to an arbitration agreement to compel a nonsignatory to arbitrate claims which are dependent upon, or inextricably intertwined with, the obligations imposed by an agreement. *JSM Tuscany, LLC v. Super. Ct.*, 193 Cal. App. 4th 1222, 1240-41 (2d Dist. 2011). When a plaintiff brings a claim which "relies on contract terms" against a defendant, the plaintiff can be equitably estopped from repudiating the arbitration clause contained in that agreement. *Id.* at 1239. When a plaintiff sues on a contract on the basis that, even though the plaintiff is not a party, they are entitled to recover for its breach, "the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." *Id.* (citations omitted).

Similarly, California law allows a nonsignatory to be compelled to arbitration where: (1) the nonsignatory is a third-party beneficiary of the contract containing the arbitration agreement; and (2) a "preexisting" relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to

compel the nonsignatory to also be bound to arbitrate his or her claim. *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1069-70 (1st Dist. 2008) (citations omitted).

The facts of this case demonstrate that equity requires that SDG&E be estopped from refusing to comply with the dispute resolution provision. SDG&E clearly brings claims based upon the Contract, including breach of contract. SDG&E repeatedly asserts that it can recover because it has direct rights, or is a third-party beneficiary. SDG&E seeks to benefit from the Contract by recovering for causes of action arising from the Contract. Equity requires that it abide by the agreement to use arbitration to resolve Contract disputes.

The Court notes that SDG&E raised several objections to Defendants' reply brief, including the allegation that Defendants raised equitable estoppel for the first time. (Docket No. 16). Defendants clearly based their Motion upon the fact that SDG&E's efforts to seek relief under the Contract bound them to arbitration. SDG&E, therefore, should have been aware that Defendants were likely to discuss equitable estoppel after SDG&E disputed that it could be held to the Contract. Even if SDG&E was surprised by the argument, SDG&E had an opportunity to respond. Indeed, SDG&E's response requested oral argument due, in part, to the "likelihood" of new arguments in the reply brief. (Opp'n at 1 n.1). SDG&E was granted oral argument and had an opportunity to respond to reply brief arguments.

B. Equity Requires That SDG&E be Compelled to Participate as a Full Party

SDG&E expresses concern about how the arbitration will be conducted. It is apparent from the hearing conducted on the Motion that Defendants seek to hold SDG&E to the arbitration provision, but will attempt to prevent SDG&E from presenting its own arguments in the arbitration.

A court's role in enforcing arbitration agreements is limited, and the rights of parties and the procedures used in arbitration are generally left to the arbitrators. This case presents the special instance, however, where one party's interpretation of the

arbitration procedures would render enforcement of the arbitration provision inequitable and unjust.

Defendants ask this court to determine that equity requires SDG&E to arbitrate its claims. An appeal to the equity jurisdiction of a court is an appeal to the sound discretion which guides the courts of equity. *See Hecht v. Bowles*, 321 U.S. 321, 329 (1944) (citation omitted). The essence of equity jurisdiction has been the power to "do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Id.* A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute. *Cortez v. Purolater Air Filtration Prod. Co.*, 23 Cal. 4th 163, 180 (2000). Equity will not compel SDG&E to arbitrate if the arbitration prevents SDG&E from asserting its own claims. This Court therefore cannot enforce this provision without taking the consequences into consideration.

Much as equity does not allow SDG&E to benefit selectively from the Contract by asserting claims without being bound by the Contract's restrictions, Defendants cannot selectively assert the benefit of the arbitration provision without allowing SDG&E to assert its rights. Were it otherwise, this Court could not stay the proceedings and force SDG&E to abide by the dispute resolution provision. The co-owners are different entities with different interests and different claims for relief. It would be inequitable to force SDG&E to place its claims for relief entirely in the hands of a party with which it may have a conflict of interest. For instance, the possibility that Edison will be accused of contributory negligence may mean that Edison's interests are not aligned with SDG&E's interests. Defendants ask this Court to enforce a contract which it interprets as preventing SDG&E from asserting its rights for itself in any forum.

Equitable principles thus require that SDG&E be allowed to participate fully in the arbitration, and cannot be forced to litigate its claims through Edison or EMS.
///

## C.  Defendants Have Met Their Burden

SDG&E argues that Defendants have not met their burden to prove the existence of an agreement.  (Opp'n at 4).  SDG&E argues that a court should require the party seeking to enforce an arbitration clause to prove that an agreement exists by a "preponderance of the evidence."  (*Id.* (citing *Aoki v. Gilbert*, No. 2:11-cv-2797, 2013 WL 1156495, at *5 (E.D. Cal. Mar. 19, 2013))).  It further cites to the Ninth Circuit's citation of a Third Circuit opinion in which the Third Circuit held that a court should only decide as a matter of law that parties did or did not enter into an agreement where there is no genuine issue of material fact concerning the formation of the agreement. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted).  SDG&E argues that if there is any doubt as to whether an agreement exists, the matter must be resolved through an evidentiary hearing or trial. (Opp'n at 4 n.2).

SDG&E contends that Defendants have not met their burden to show that SDG&E is bound to the agreement.  First it points to instances in which Defendants have acted as if SDG&E was not a party bound by the provisions of the contract. (Opp'n at 5-6).  For instance, SDG&E was not invited to certain meetings and Defendants insisted upon SDG&E signing a non-disclosure agreement before allowing SDG&E to access information relating to the project, despite the confidentiality provisions of the contract.  (*Id.*)  SDG&E states that Defendants fail to offer evidence that EMS was acting as SDG&E's agent when it agreed to arbitrate disputes, and argues that its own allegations that EMS entered into the agreement on SDG&E's behalf were only based on "information and belief."  (*Id.* at 6, 8).

The Court has found that the undisputed facts permit this Court to determine that equitable estoppel requires SDG&E to be bound by the dispute resolution clause.  This conclusion is not undermined by alleged actions by Defendants which might reflect the belief that SDG&E was not bound by the Contract.  SDG&E is now asserting that it can enforce the Contract directly or as a third-party beneficiary.  It is therefore bound by the

restrictions of that contract.

SDG&E cannot avoid this result by asking Defendants to prove SDG&E's own allegations. Defendants are entitled to treat SDG&E's allegation in its Complaint as a judicial admission. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1197 n.6 (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). SDG&E cannot base its claims for recovery upon the allegation that EMS was its agent, then demand that Defendants prove that SDG&E's allegation is true before complying with the arbitration provision.[1]

D. This Court Need Not Determine SDG&E's Status as a "Party"

SDG&E alleges that Defendants intend to force SDG&E to arbitrate as a party to the Contract, then argue in arbitration that SDG&E is not a party and therefore unable to enforce the Contract. It contends that this Court must determine whether SDG&E is a party before requiring SDG&E to comply with the dispute resolution provision. (Opp'n at 1, 5). In doing so, it cites to authority for the notion that a court must determine whether there is a contract, and whether a party is bound by that contract, before compelling a party to arbitrate. (*Id.* at 3).

The threshold question for this Court is whether the plaintiff in question is bound by the agreement. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964). It is somewhat unclear exactly what SDG&E means when it refers to a "party," but to the extent SDG&E asks this Court to determine SDG&E's right to relief, this is inappropriate. The resolution of questions regarding SDG&E's right to relief is the job of the arbitrators.

Even if, as SDG&E claims, sending this proceeding to arbitration without first determining its rights may cause some inefficiency, this Court is nonetheless required

---

[1] The context of this motion is entirely different from a summary judgment motion in which a party has no evidence beyond a mere allegation in a complaint. Although the *Three Valleys* court appeared to approvingly cite to Third Circuit authority requiring an absence of a genuine issue of material fact before compelling arbitration, there is a significant difference between a party relying on its own self-serving allegation to force arbitration, and a party relying on an allegation made by the party resisting arbitration. *See Three Valleys*, 925 F.2d at 1141.

to enforce a valid and applicable arbitration provision. *See Dean Witter Reynolds, Inc.*, 470 U.S. at 219-21.

E. This Court Need Not Address the Agency Theory

Defendants also argue that SDG&E is required to comply with the dispute resolution provision because EMS entered into the contract as SDG&E's agent. SDG&E itself alleges that EMS entered into the contract as its agent, that SDG&E was a disclosed principal, and that SDG&E has "direct rights" under the Purchase Order. Defendants also cite to out-of-circuit case law in which a non-signatory principal was compelled to arbitrate by an agreement executed by its agent. (Mot. at 7). Defendants also state the general theory that a disclosed principal is a party to a contract if made within the agent's authority. (*Id.*) Defendants contend that although the provision refers to "any dispute, controversy or claim between or among Supplier and EMS or Edison," EMS was acting as the agent for SDG&E, and a dispute between SDG&E and Supplier would be covered. (Mot. at 7-8 n.2).

Review of the facts put forward by SDG&E indicates that SDG&E may be bound to arbitrate by agency principles. No party has presented a case that considers a fact situation similar to the one before this Court. However, it is established California law that a disclosed principal may be held liable on a contract made solely in the name of the agent. *Bank of Am. Nat. Trust & Savings Ass'n v. Cryer*, 6 Cal. 2d 485, 488 (1936). SDG&E itself alleged that EMS entered into the Purchase Order as its agent. (FAC ¶ 24). Agreeing to dispute resolution provisions is a normal incident of carrying out one's authority to enter into a supply contract. *See Madden v. Kaiser Found. Hosp.*, 17 Cal. 3d 699, 707 (1976) (rejecting argument that authority to agree to arbitration must be specially conferred and stating that arbitration is a "'proper and usual' practice for effecting the purpose' of the agency; [the agent] merely agrees that disputes arising under the contract be resolved by a common, expeditious, and judicially-favored method").

However, the arbitration provision at issue in this case may be unusual.

Defendants argued at the hearing that SDG&E and Riverside were not entitled to fully participate in an arbitration hearing, and had to permit Edison alone to enforce their rights. Although a standard arbitration clause might be a normal incident of entering into contracts, the same cannot be said for a provision that requires parties to both give up their right to litigate their claims in court and to rely on another party to enforce their rights in arbitration.

Defendants have not demonstrated that EMS was authorized to yield SDG&E's right to enforce the contract on its own behalf. Review of the portions of the Operating Agreement submitted by Defendants does not support the contention that EMS could enter into such a provision as SDG&E's agent. Defendants attached a document which they assert is the Operating Agreement between the parties.[2] (Reply, Croutch Decl., Ex. A). Nothing in the exhibit indicates that SDG&E has agreed that its rights may only be enforced through Edison or EMS. The fact that EMS may have been acting as SDG&E's agent in entering the Contract does not indicate that the scope of the agency granted to EMS also gave EMS an *exclusive* right to enforce the Contract. Additionally, nothing in the exhibit indicated that Edison or EMS was authorized to surrender SDG&E's rights to enforce its claims.

If the arbitration provision is a standard provision that allows the parties subject to it to present their own claims, then Defendants have demonstrated that SDG&E should be subject to that provision under agency principles. If, however, the arbitration provision requires SDG&E to give up additional substantial rights, the Defendants have not met their burden of demonstrating that EMS was able to bind SDG&E to the provision as SDG&E's agent.

The Court does not find it necessary to resolve this question. If it is a standard clause, the outcome is the same as if SDG&E is compelled to arbitrate as a full party

---

[2]SDG&E objects to Defendants' inclusion of the Operating Agreement in Defendants' reply brief. This objection is **OVERRULED**. The Court uses this document only to show that even if the agreement was as Defendants allege, Defendants' arguments could not succeed.

under an equitable estoppel theory. If SDG&E cannot pursue its own claims under the arbitration clause, then it has not demonstrated that the agent had authority to enter into such an extraordinary clause. In that case, the clause would not bind SDG&E under agency principles and SDG&E would only be subject to the clause under equitable estoppel.

## CONCLUSION

This Court will not intrude unnecessarily into the province of the arbitration panel. This Court only determines that SDG&E is compelled to arbitrate its claims, and that SDG&E must be allowed to assert its claims and argue its own case in arbitration proceedings, and cannot be forced to act only through Edison or EMS.

This Court therefore **GRANTS** the Motion to Stay. This case is **STAYED** pending arbitration. This Court shall retain jurisdiction to enforce any arbitration award. Defendants are **ORDERED** to file a status report with this Court 180 days after this Order is filed, and every 180 days thereafter, until this matter is no longer stayed.

The parties are cautioned that should it appear that SDG&E is marginalized or prevented from fully participating in the arbitration proceedings, this Court may either dissolve the order staying litigation, or take such actions into account when considering whether to affirm any arbitration award.

**IT IS SO ORDERED.**

DATED: March 14, 2014

Hon. Roger T. Benitez
United States District Judge